UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KENNETH STOCKS | CIVIL ACTION NO. 3:07CV1844 |
| VERSUS | JUDGE ROBERT G. JAMES |
| LOWES HOME CENTERS, INC. | MAGISTRATE JUDGE KAREN HAYES |

### REPLY MEMORANDUM OF LOWE'S HOME CENTERS, INC. TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

Lowe's Home Centers ("Lowe's"), submits this reply brief to respond to arguments made by plaintiffs Kenneth Stocks and Sharon Stocks in their opposition to Lowe's Motion for Summary Judgment. That opposition is not sufficient to defeat summary judgment in favor of Lowe's because it ignores undisputed evidence in the record and relies on erroneous arguments concerning the applicable law.

### I.   APPLICABLE LAW – SUMMARY JUDGMENT STANDARDS

At page 4 of their opposition, plaintiffs refer the Court to Louisiana law concerning the summary judgment standard. While Louisiana law governs the substantive issues in this case, the standard of review for this motion for summary judgment is a procedural issue governed *solely* by the Federal Rules of Civil Procedure, specifically Rule 56. Under Rule 56, summary judgment should be rendered when a party is unable to show a genuine issue of material fact on which that party will bear the burden of proof at trial *Celotex Corp. v. Catrett*, 477 U.S. 317: 106 S. Ct. 2548; 91 L. Ed. 2d 265 (1986).

Plaintiffs argue that Lowe's is asking the Court to make a credibility determination in this

1

motion for summary judgment. Lowe's original memorandum refutes that argument. (See Original Memorandum, page 7-8) It is obviously not proper for the Court to make a credibility determination in the context of this motion. However, it is completely appropriate for the Court to scrutinize the evidence offered by Stocks to determine whether that evidence is competent to defeat the motion. The law of this circuit, and federal courts in general, is clear that summary judgment is appropriate in any case where the evidence offered in opposition to the motion is so weak or tenuous that it could not support a judgment in favor of the non-movant. *Little vs. Liquid Air Corp.*, 37 F.3d 1069 (5 Cir. 1994). While courts may not assess credibility on summary judgment, if evidence is contradictory or implausible, it may be disregarded. Self-serving and contradictory testimony cannot defeat a motion for summary judgment by attempting to create a material issue of fact. *Trans-Orient Marine Corp. v. Star Trading and Marine Inc.* 925 F.2d 566 (2d. Cir.1991); *Jeffreys v. Rossi*, 275 F.Supp.2d 463 (S.D.N.Y. 2003). Conclusory allegations and statements are not competent evidence to defeat summary judgment. *Brown vs. Brown and Williamson Tobacco Corp.*, 79 F.3d 383 (5 Cir. 2007); *Turner vs. Baylor Richardson Medical Center*, 476 F.3d 3-7 (5 Cir. 2007). Unsubstantiated assertions, improbable inferences and unsupported speculation are not sufficient to defeat a motion for summary judgment. *Brown vs. City of Ethan, Texas*, 337 F.3d 539 (5 Cir.2003); *Nuwer vs. Mariner Post-Acute Network*, 332 F.3d 310 (5 Cir. 2003).

## II. APPLICABLE LAW – SUBSTANTIVE ISSUES

Plaintiffs' arguments on liability rely upon the Louisiana "Merchant Statute" and case law which deals with the liability of merchants whose establishments are in an "open for business" mode. (See Opposition brief, page 10) The merchant statute and liability evaluation in those cases is not applicable here because this store was not open – it was being set up for

opening. *Stocks himself was one of the employees charged with the job of setting the store up to be opened.* Stocks was not a customer shopping in a retail environment – he was employed to set up that environment. He was on notice of any risk associated with the "setup" activities because he was performing the setup. He had been working full-time for PMI since 2004 (Stocks deposition, p. 19, ll. 9-10). His work for PMI involved stocking its products in both open and soon-to-be-opened stores. He was obviously familiar with risks associated with store setup, including the presence of pallets. He was specifically aware of the location of these pallets and had handled them himself that day. This case should be controlled by the liability evaluation applied by Louisiana courts in cases involving a workplace or industrial environment, such as the construction site in *Paul vs. Commercial Union Insurance Company*, 535 So.2d. 1319 (La.App. 5 Cir.1988), the mechanic shop in *Greene vs. Catalytic Inc.*, 341 So.2d 1172 (La.App. 1 Cir.1977), and the loading dock in *Montesino vs. Menard*, 588 So.2d. 704 (La.App. 4 Cir.1991), cited in defendant's original supporting memorandum. In such an environment, seasoned workers like Stocks who encounter obvious and apparent workplace situations cannot and should not be compared with customers in an open retail store.

Plaintiffs also attempt mischaracterize Mr. Stocks as an "invitee" of Lowe's on the day of the incident. That is clearly a mischaracterization of the law and evidence. Stocks was, in essence, working as a Lowe's employee, side by side with other Lowe's employees and other vendors in store set-up, prior to opening. Use of the term "invitee" as it is applied in Louisiana jurisprudence is not appropriate or accurate.

### III. LOWE'S DID UNDERTAKE REASONABLE MEASURES TO KEEP THE STORE SAFE DURING SETUP OPERATIONS

Plaintiffs' opposition implies that Lowe's employees took no action to move pallets that were being stacked in the central aisle during store setup. This argument ignores evidence in the

3

record, including Stocks' testimony. The evidence is undisputed: as products were removed from new pallets, the empty pallets were stacked in a central aisle near the cross-aisle where Stocks and Many were working. Lowe's employees continuously moved these pallets from the stack throughout the day.

Plaintiffs' opposition memorandum does not quote the section of the deposition where Mr. Stocks himself admitted this fact:

> Q: Okay. And that's fine. During the day while ya'll were working there, did anyone ever come and take some of the pallets away?
> A: Yeah. Some of them—some of them. They'd come and take some of them away, you know, during the day, but then they'd pile more in there.
> Q: Okay. So that was a process that was kind of going on?
> A: Yes.
> (Stocks Deposition, page 85)
>
> Q: Okay. The process of people leaving pallets in this area at the end of the aisle that you just showed me, that started before lunch even?
> A: Yes.
> Q: When you left for lunch as you described before, were there pallets in that same area when you left?
> A: As far as I recall, there was pallets there when we left and they had done some cleanup work when we come back.
> Q: All right... At that time when you left to go to lunch, you said there was a lot of pallets. How were they on the floor? In other words, were they stacked or were they all just laying around, or how were they—
> A: Yeah. So there was—there was a pile.
> Q: All right. So when you left at lunch there was a pile of pallets?
> Q: All right. Did you have to walk across the pallets when you left at lunch? In other words, put your feet on the pallets and walk over the pallets, as well?
> A: No, there was—We still had room to go in here (indicating).
> Q: Okay. That's fine. When you came back from lunch, what was the situation with the pallets then?
> A: The pile had gone down when we came back, and we came back directly to here, to this work area (indicating).
> Q: Yes.
> A: And the pile had—had come down, and so we just went directly to work, you know, doing what we were doing.
> Q: There was still a few there?
> A: There were still pallets there.
> (Stocks Deposition page 86-91)

Plaintiffs also argue that Lowe's employees "violated" Lowe's procedures concerning pallets discussed in the Lowe's training video. This argument is misleading and not supported by the evidence. The training video recognizes that pallets have to be used in store setup and instructs employees that empty pallets should not be left indefinitely around the store, but should "make their way" to a receiving area. When considered as a whole, the instructions of the video are clear – employees are to take reasonable steps to clear pallets from the general store area as they are used. Here, the evidence is clear that Lowe's employees followed that instruction.

### IV. THE EVIDENCE IS UNDISPUTED THAT STOCKS VOLUNTARILY WALKED ACROSS THE PALLETS WHEN HE HAD OTHER AVAILABLE OPTIONS TO EXIT THE STORE

Plaintiffs continue to argue that Mr. Stocks was "forced" to walk across the pallets. This claim is not supported by the record. In deposition, Stocks suggested or argued that he had to walk across the pallets because the store was closing. (Stocks Deposition, pages 94-95). That testimony was conclusory, unsupported, speculative and self-serving and therefore not competent to preclude summary judgment. (See cases cited in Section 1 above.) The **facts** admitted by Stocks and by Mr. Many make it clear that, at the time he chose to walk across the pallets, Stocks was not alone, or at risk to be locked in the store. Numerous employees (estimated at 75, including Mr. Many) were still in and around the store. There was a Lowe's employee standing near the pallets who was aware that Stocks and Many were leaving because she was watching Stocks. (Stocks deposition, page 98, lines 9-10, page 99, lines 17-23, page 104-109, Many deposition, page 26-27). Finally, and most importantly, Stocks cannot say that his choice to walk across the pallets was motivated by any present sense of urgency. (Stocks deposition, page 107, line 13, page 108, line 19).

The record shows that Stocks had at least three other options to exit. First, he could have

walked behind Mr. Many in the space between the pallets and the shelves. Charles Many testified as follows:

> "Q. Can you say whether or not the pallets that were in that area where completely obstructing the end of aisle? In other words, were they all the way across to where you could walk past them or were they not or do you remember?
> "A. We had a-we had a narrow space...." (Many depo., p.23, l.24-p. 24, l. 3).

Mr. Stocks testified as follows:

> "Q. Did [Mr. Many] walk the same path that you did?
> "A. Yes, he did.
> "Q. So you were following him when the accident happened?
> "A. Yes." (Stocks depo., p. 102, ll. 13-19).

Mr. Stocks was behind Mr. Many when they were leaving the store. Mr. Many walked beside the pallets. Mr. Stocks voluntarily and without necessity, chose to walk across the pallets.

Stocks' second option was to retrace his steps and exit the aisle from the other direction. (Stocks Deposition, Exhibit 1) His third option was to move pallets to clear more space, as he had earlier in the day. (Stocks Deposition, page 90)

Plaintiffs also argue that Stocks's decision to walk across the pallets should be considered on the issue of comparative fault but not on the issue of "the reasonableness of the hazard" (sic) (Opposition Memorandum, page 15). This is not correct. Under Louisiana law, the obviousness of a risk is a fact to be considered in the determination of whether a condition is unreasonably dangerous. (See cases stated at page 6 of Lowe's Original Memorandum.) Also, the issue of whether an employee had other available and practical options to proceed is relevant on the issue of the reasonableness of the employees' activities which result in an injury. (Original Memorandum, page 6)

## V. CAUSATION

Stocks has still not offered sufficient evidence to prove the cause of his fall. Plaintiffs argue that Lowe's has not produced any evidence "to indicate an alternative cause of the fall," but that is not Lowe's burden. Lowe's is entitled to summary judgment if the plaintiff is unable to present competent evidence to satisfy his burden of proof on the essential element of causation. Mr. Stocks testified that he fell *when* he started over the pallets but he could say whether something on the pallets *caused* him to fall. He testified as follows:

> Q: Do you have a memory of specifically what caused you to trip?
> A: No, I do not.
> (Stocks Deposition, p.103)

Louisiana courts considering cases where there is a dispute over the existence of an unreasonably dangerous condition have routinely held that a plaintiff cannot satisfy his burden of proof on causation if he testifies that is unsure of the cause of his or her fall. (Original Memorandum, page 8)

## VI. PRESCRIPTION

The consortium claim of Mrs. Stocks is prescribed. In federal court, relation-back of amended pleadings issues are governed by Federal Rule 15(c). Relation-back occurs under that Rule only if the party to be brought in by the amendment:

> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity
> (Fed. Rules Civ. Proc., Rule 15c(i and ii).

In *Pappion v. Dow Chemical Company*, 677 F.Supp. 1576 (W.D. La. 1986), this Court dealt with this rule in detail in a diversity tort action where the plaintiff attempted to untimely

7

add her major children to her previously filed wrongful death action. This Court held as follows:

> "We hold that Rule 15(c) does not extend to the Fifth Amended Complaint which attempted to add the untimely wrongful death claims of the major Pappion children.
>
> ...defendants in the case before us had no notice that any claims of the ten major Pappion children were in any way involved in the lawsuit before the Fifth Amended Complaint which asserted their late wrongful death claims. Indeed, upon thorough examination*1581 of the entire record, we find no mention of the children at all before the Fifth Amended Complaint. Even if defendants did know of the children's existence, they certainly did not know that they were even remotely a part of this action." (*supra* at 1580-81)

The *Pappion* rationale was applied by the Louisiana Eastern District in *LeMasters v. K-Mart, Inc.*, 712 So.2d 518 (E. D. La. 1989), which was factually similar to the instant case. As in this case, *LeMasters* involved a husband who filed a trip-and-fall action against a retailer. As here, more than one year after the date of the accident had passed before the plaintiff attempted to amend the complaint to bring in his wife for the purpose of her alleged lost consortium claim. Unlike this case, the wife in *LeMasters* witnessed her husband's accident, and K-Mart allegedly knew that they were married. (*supra* at 520). Nonetheless, relying on Rule 15, the Eastern District stated:

> "[t]he Court finds that Ms. LeMasters' claim for loss of consortium does not relate back to the date her husband filed suit. Plaintiffs have offered no evidence to establish that K-Mart knew or should have known of the existence of her cause of action (*supra*, *citing* Moore's <u>Federal Practice</u>).

In this case, there was nothing prior to the filing of the amended complaint that would have alerted Lowe's to existence of Mr. Stocks' spouse. As this Court found in *Pappion*, the fact that a plaintiff may have had children or a spouse who might make a claim cannot be presumed. The *Pappion* and *LeMasters* rationale applies here – the claim of Mrs. Stocks is prescribed.

## VII. <u>THE INTERVENTION CLAIMS SHOULD ALSO BE DISMISSED</u>

Because Lowe's is entitled to summary judgment, Lowe's is also entitled to a dismissal

of the claims of the intervenor, Employers Insurance Company of Wausau. Obviously, liability for the claims of the intervenor is dependant upon liability of the defendant to the plaintiff. If Lowe's is entitled to summary judgment against the plaintiffs, then Lowe's is also entitled to summary judgment dismissing the claims of the intervenor.

## VIII. CONCLUSION

For all the reasons discussed above, the plaintiffs' opposition to Lowe's motion is insufficient to preclude summary judgment in favor of Lowe's. There are no material issues of fact and Lowe's is entitled to judgment as a matter of law. The motion should be granted, dismissing all claims of plaintiffs Kenneth and Sharon Stocks against Lowe's. Further, the claims of the intervenor, Employers Insurance Company of Wausau, should also be dismissed with prejudice.

Respectfully submitted,

s/Donald Armand, Jr.---Trial Attorney
La. Bar No. 17444
Jerald L. Perlman
La. Bar No. 8602

PETTIETTE, ARMAND, DUNKELMAN,
WOODLEY, BYRD & CROMWELL, L.L.P.
400 Texas Street, Suite 400
Post Office Box 1786
Shreveport, Louisiana 71166-1786
Telephone: (318) 221-1800
Facsimile: (318) 226-0390
Email:    darmand@padwbc.com
ATTORNEYS FOR LOWE'S HOME CENTERS, INC.

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| KENNETH STOCKS | CIVIL ACTION NO. 3:07CV1844 |
|---|---|
| VERSUS | JUDGE ROBERT G. JAMES |
| LOWES HOME CENTERS, INC. | MAGISTRATE JUDGE KAREN HAYES |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 17, 2009, a copy of the foregoing Motion for Summary Judgment on behalf of LOWE'S HOME CENTER, INC., was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Mr. Donald L. Kneipp and Mr. Scott B. Kiefer by operation of the court's electronic filing system

Respectfully submitted,

s/Donald Armand, Jr.
La. Bar No. 17444

PETTIETTE, ARMAND, DUNKELMAN,
WOODLEY, BYRD & CROMWELL, LLP
400 Texas Street, Suite 400
Post Office Box 1786
Shreveport, Louisiana 71166-1786
Telephone:  (318) 221-1800
Facsimile:  (318) 226-0390
Email:  darmand@padwbc.com
Attorneys for Lowe's Home Centers, Inc.