# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | | |
|---|---|---|
| **KENNETH STOCKS** | * | **CIVIL ACTION NO. 07-1844** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **LOWES HOME CENTERS, INC.** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion for summary judgment [doc. # 31] filed by defendant, Lowe's Home Centers, Inc. For reasons assigned below, it is recommended that defendant's motion for summary judgment [doc. # 31] be GRANTED.

## Procedural History

On April 12, 2007, Kenneth Stocks ("Stocks") filed the above-captioned suit against defendant, Lowe's Home Centers, Inc. ("Lowe's"), in the Third Judicial District Court for the Parish of Lincoln, State of Louisiana, to recover damages for injuries that he suffered following an April 13, 2006, trip and fall accident while working for a Lowe's vendor during the pre-opening preparations for the Lowe's store in Ruston, Louisiana. Plaintiff contends that his accident and resulting damages were caused by Lowe's negligence.

On November 6, 2007, Lowe's removed the case to federal court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. (Notice of Removal). On February 27, 2008, Stocks amended his complaint to join as an additional plaintiff, his spouse, Sharon Kay Stocks, adding her claims for

loss of consortium and associated damages. (1st Suppl. & Amend. Petition [doc. # 15]). On March 11, 2008, Employers Insurance Company of Wausau, the workers' compensation insurer for plaintiff's employer, intervened in the matter to recover past and future compensation benefits and medical expenses that it paid to Stocks as a result of the accident. (Compl. in Intervention [doc. # 18]).

On June 4, 2009, Lowe's filed the instant motion for summary judgment seeking dismissal of plaintiffs' claims in their entirety. [doc. # 31]. The motion contends not only that Stocks is unable to establish the requisite elements of his negligence claim against Lowe's,[1] but that Sharon Kay Stocks' claims are time-barred. Plaintiffs oppose the motion. [doc. # 39]. Lowe's filed its reply memorandum on July 17, 2009. [doc. # 44]. The matter is now before the court.

**Summary Judgment Standard**

Summary judgment is appropriate when the evidence before the Court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(b). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing

---

[1] Lowe's seeks dismissal of the intervention and Sharon Stocks' claims for the same reason.

the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. While courts will "resolve factual controversies in favor of the non-moving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). There can be no genuine issue as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-323. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

## **Background**

During the relevant period, Stocks was employed by Product Management Inc. ("PMI"), a vendor that had contracted with Lowe's to assist in the setup and preparation for the grand

3

opening of its Ruston store. (Petition, ¶ 2; Stocks Deposition, pg. 32; Def. Exh. A).[2] On the day of the accident, Charles Many, a PMI subcontractor, was working with Stocks in the mop and broom aisle. *Id*. at pgs. 32-33, 73. Stocks and Many worked in the same area of the store from about 8:00 a.m. until 6:00 p.m. that day. *Id*. at pgs. 70, 72-73. Other workers, most of whom were Lowe's employees, were also active on the same aisle. *Id*. at pg. 73. Throughout the course of the day, Lowe's employees repeatedly brought empty 4' by 4' wooden pallets and piled them at the end of the aisle next to the area where Stocks and Many were working. *Id*. at pgs. 75-77. From time to time, workers would come and take some pallets away, but then the stack would build up again. *Id*. at pg. 85.

Around midday, Stocks and Many left for lunch. (Stocks Depo., pgs. 78, 87). At that time, there was a wide enough gap between the pallets and the edge of the aisle so that Stocks and Many could walk around the pallets as they departed and returned. *Id*. at pgs. 89-90. After lunch, Stocks noticed that the pile of pallets had subsided. *Id*. at pg. 89. Indeed, during the workday, Stocks told two Lowe's employees that they needed to move the pallets because "somebody's going to get hurt." *Id*. at pg. 92. Nonetheless, despite periodic reductions in the number of pallets, the pile progressively grew throughout the day. *Id*. at pgs. 92-93. By the last hour of the workday, Stocks and Many were compelled to walk across the pile of pallets or move them out of the way so they could access the product that they were stacking on the shelves. *Id*. at pgs. 90-91.

At approximately 6:00 p.m., Stocks heard an announcement over the loudspeaker that the store was closing. *Id*. at pg. 93. For a few minutes after the announcement, Stocks and Many

---

[2] Needless to say, the store was not yet open to the public. (Stocks Depo., pg. 33).

stayed at their positions and cleaned up their work area. *Id*. at pg. 96. Usually, the store afforded everyone five to fifteen minutes to exit the store. *Id*. at pgs. 96-97. At some point, Stocks heard someone "hollering" over the microphone, "Let's go. Let's go. Let's go." *Id*. at pg. 96. Stocks told Many that they had better get out of there. *Id*. at pgs. 101-102. By that time, the pile of pallets stretched from one side of the end of the aisle to the other side preventing anyone from walking that way without crossing the pallets. *Id*. at pgs. 93-94.[3] However, the pallets did not block the aisle toward the rear of the store, and thus Stocks had an alternate exit route via the adjacent aisle. *Id*. at pgs. 97-102. Nonetheless, Stocks opted to traverse the barricade of pallets because of his fear that if he took the circuitous route, he would not exit the store before they locked the doors and sealed him inside overnight. *Id*.

According to Stocks, he followed Many across the pile of pallets. *Id*. at pg. 102.[4] As Stocks crossed the pallets, however, he tripped and fell on all fours, almost skidding to the service desk. *Id*. at pg. 94. Stocks does not specifically recall what caused him to trip. *Id*. at pg. 103. At the time of his fall, Stocks had to step on at least three pallets before coming down on the other side. *Id*. at pg. 104. The total height of the strewn pallets was less than two feet. *Id*.

## Analysis

Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct.

---

[3] Many believed that there was a narrow space for someone to walk around the pallets. (Many Depo., pgs. 23-24, 26; Def. Exh. B). However, to the extent that there is a conflict between Many and Stocks' testimony, the court must construe the disputed fact in favor of the non-movant. *Little, supra*.

[4] Many, however, indicated that he was already on the other side of the pallets when it was time to leave. (Many Depo., pgs. 23, 26; Def. Exh. B).

5

2211(1996); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817 (1938). The parties in this matter implicitly agree that the disputed issues are governed by the substantive law of Louisiana.[5] *See, In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007) (deferring to the parties' agreement that Louisiana substantive law controlled), *cert. denied sub nom. Xavier University of Louisiana v. Travelers Cas. Property Co. of America*, ___ U.S. ___, 128 S.Ct. 1230 (Feb 19, 2008); *Jefferson v. Lead Indus. Ass'n*, 106 F.3d 1245, 1250 (5th Cir. La. 1997) (applied Louisiana law where no party disputed that Louisiana law governed).[6]

## I. Stocks' Claim

Stocks contends that his accident and resulting damages were caused by Lowe's negligence. (Petition, ¶ 6).[7] To determine whether a plaintiff should recover on a negligence claim, Louisiana courts employ a duty-risk analysis. *Long v. State ex rel. Dept. of Transp. and Development*, 916 So.2d 87, 101 (La. 2005) (citation omitted). Under the duty-risk analysis, plaintiff must establish five elements:

(1) proof that the defendant had a duty to conform his conduct to a specific

---

[5] Both sides analyzed plaintiffs' claims pursuant to Louisiana law.

[6] In *Jefferson*, the Fifth Circuit's decision incorporated the underlying district court opinion, 930 F. Supp. 241 (E.D. La. May 31, 1996) (J. Vance)

[7] Under Louisiana law, the applicable sources for delictual liability are found in Civil Code Articles 2315 and 2317. Under either article, plaintiff's burden of proof is now the same. *See*, *Dupree v. City of New Orleans*, 765 So. 2d 1002, 1007 n.5 (La. 2000). Civil Code Article 2317.1, enacted in 1996, "abolished the concept of strict liability" that existed in Louisiana under the pre-1996 version of Article 2317. *Broussard v. Voorhies*, 970 So. 2d 1038, 1042 (La. App. 1st Cir. 2007), writ denied, 970 So.2d 535 (La. 2007). Before the 1996 amendments, the "sole distinction between the burden of proof necessary to recover under a negligent action . . . versus a strict liability action . . . was . . . proving the defendant's scienter." *Lasyone v. Kan. City S. R.R.*, 786 So. 2d 682, 689 n.9 (La. 2001); *Dupree, supra*. Article 2317.1 "eliminated that distinction." *Lasyone*, 786 So. 2d at 689 n.9; *Dupree*, 765 So. 2d at 1007 n.5.

6

standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element).

*Id.*[8]

Lowe's contends that plaintiff's claim fails because there is no evidence that the pallets caused his fall or that the stack of pallets presented an unreasonably dangerous condition. The undersigned will address each argument in turn.

a) Cause in Fact

Generally, cause-in-fact is the outset determination in the duty-risk analysis. *Boykin v. Louisiana Transit Co., Inc.*, 707 So.2d 1225, 1230 (La. 1998) (citing *Pierre v. Allstate Ins. Co.*, 257 La. 471, 242 So.2d 821 (1970)). "Cause-in-fact usually is a 'but for' inquiry which tests whether the accident would or would not have happened but for the defendant's substandard conduct." *Id*. When there are concurrent causes of an accident, the proper inquiry is whether the conduct at issue was a substantial factor in precipitating the accident. *Id*.

Lowe's contends that plaintiff cannot establish that the pallets caused his fall because he

---

[8] There is some equivocation in the parties' memoranda regarding the applicability of Louisiana's merchant liability statute in this matter, due to the fact that the Lowe's store was not yet open for business and because Stocks was not a shopping customer. *See* La. R. S. 9:2800.6; *Stewart v. Winn Dixie Louisiana, Inc.*, 686 So.2d 907, 911 n1 (La. App. 5th Cir. 1996) (merchant liability statutes applies to "persons" whether customers or not). However, the court need not resolve this issue because there is considerable overlap between the elements of a claim governed by the merchant liability statute and the elements of a negligence claim. *White v. Wal-Mart Stores, Inc.*, 699 So.2d 1081, 1084 n3 (La.1997). Formerly, the principal distinction between the two was that the merchant liability statute required plaintiff to prove that the merchant had actual or constructive notice of the condition that caused the harm. Now, of course, strict liability has been abolished. *See* n7. Moreover, Lowe's knowledge of the stack of pallets is not at issue here; plaintiff has adduced evidence that Lowe's employees created the pile of pallets and that he notified them of the potential hazard. *See* discussion, *supra*.

stated in his deposition that he did not specifically recall what caused him to trip. (Stocks Depo., pg. 103). In contrast to the cases cited by defendant, however, plaintiff testified that he was actually walking on the pallets at the time that he tripped and fell. *Id*. at pg. 104. He further stated that he tripped over the pallets. *Id*. at pg. 94. This evidence discharges plaintiff's summary judgment burden regarding causation. *Contrast, Reed v. Home Depot USA, Inc.*, 843 So.2d 588, 591 (La. App. 2d Cir. 2003) (plaintiff denied tripping or slipping on anything); *Odom v. Colonel Sanders Kentucky Fried Chicken*, 636 So.2d 1027 (La. App. 1st Cir. 1994) (evidence supported jury verdict in favor of defendant); *Estes v. Kroger Co.*, 556 So.2d 240 (La. App. 2d Cir. 1990) (evidence supported judgment for defendant following a bench trial); *Adger v. Dillard Dept. Stores, Inc.*, 662 So.2d 864 (La. App. 2d Cir. 1995) (plaintiff conceded that she did not feel sensation of stepping on foreign substance before her fall).

    b) <u>Duty/Risk</u>

In its duty-risk analysis, the court is compelled to identify "(1) the duty imposed upon the defendant by statute or rule of law and (2) the conduct by defendant that allegedly constituted a breach of that duty." *Id*. Stated another way, negligence by a thing's owner is established with proof that "something about the thing created an unreasonable risk of injury that resulted in the damage, that the owner knew or should have known of that risk, and that the owner nevertheless failed to render the thing safe or to take adequate steps to prevent the damage caused by the thing." *Teel v. State, Dept. of Transp. and Development*, 681 So.2d 340, 343 (La. 1996) (quoted source and emphasis omitted). The court must decide which risks are unreasonable in accordance with the facts and circumstances of the case. *Pitre v. Louisiana Tech University*, 673 So.2d 585, 590 (La. 1996) (citation omitted).

8

Whether a duty is owed is a question of law; whether a duty has been breached is a question of fact. *Mundy v. Department of Health and Human Resources*, 620 So.2d 811, 813-814 (La.1993) (citations omitted). Generally, "the owner or operator of a facility has the duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm." *Id*. However, the duty fluctuates depending upon the circumstances:

> [i]n determining a particular defendant's duty consideration should be given to the nature of the facility and the dangers presented by it. In considering a defendant's duty to a particular person, consideration should be given to the person's age, maturity, experience, familiarity with the premises and its dangers, and other such factors which might increase or decrease the risk of harm to that person. The duty would be greater to a person of young age and immature judgment. It would be lesser to a person with experience, knowledge and familiarity with the premises.

*Walker v. Union Oil Mill, Inc.*, 369 So.2d 1043, 1047 (La. 1979); *see also, Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 239 (5th Cir. 1983).

A plaintiff's status as an invitee, licensee, or trespasser may have some bearing on the question of liability, but is not determinative. *Shelton v. Aetna Cas. & Sur. Co.*, 334 So.2d 406, 410 (La. 1976). Furthermore, the owner of a facility owes a duty to keep its property "in a reasonably safe condition consistent with the purpose for which plaintiff was on the premises." *Boycher v. Livingston Parish School Bd.*, 716 So.2d 187 (La. App. 1st Cir. 1998).

Although the Louisiana Supreme Court has indicated that whether a condition is unreasonably dangerous or not, presents a "disputed issue of mixed fact and law or policy that is peculiarly a question for the jury or trier of the facts,"[9] it has also maintained that "a potentially dangerous condition that should be obvious to all comers is not, in all instances, unreasonably dangerous." *Murray v. Ramada Inns, Inc.*, 521 So.2d 1123, 1136 (La.1988) (citing *Shelton,*

---

[9] *Tillman v. Johnson*, 612 So.2d 70 (La. 1993) (citations omitted).

*supra*). Indeed, under the duty/risk analysis, the facts of a particular case could support a finding that a defendant owed no duty under the circumstances. *Socorro v. City of New Orleans*, 579 So.2d 931, 941-942 (La. 1991) (citing *Murray, supra*). "[T]he key to a finding of no liability in such cases is not the plaintiff's subjective awareness of the risk, but the determination that the defendant did not act unreasonably vis-a-vis the plaintiff, or injure the plaintiff through the instrumentality of an unreasonably dangerous thing in his custody." *Murray, supra*. Relying upon these earlier decisions, the Louisiana Supreme Court recited that

> the obviousness and apparentness of a potentially dangerous condition are relevant factors to be considered under the duty-risk analysis. If the facts of a particular case show that the complained of condition should be obvious to all, the condition may not be unreasonably dangerous and the defendant may owe no duty to the plaintiff.

*Pitre*, 673 So.2d at 591.

Indeed, a defendant has no duty to protect against an open and obvious hazard. *Hutchinson v. Knights of Columbus, Council No.*, 5747, 866 So.2d 228, 234 (La. 2004) (citing *Pitre, supra*). Of course, in deciding whether a condition is unreasonably dangerous the court must consider "(1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, which includes the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of its social utility or whether it is dangerous by nature." *Id*.

Applying the foregoing considerations here, it is manifest that a pile of pallets which completely blocks an aisle from one side to another, presents an open and obvious hazard to anyone considering passage. Although the pile of pallets initially appears to have had little utility in this case, it clearly served as a central collection point for the pallets instead of leaving them

individually around the store where they otherwise presented a less conspicuous tripping hazard to the unwary or distracted worker. Indeed, according to the Lowe's training video for pre-opened stores, Lowe's recognized that empty pallets were not that noticeable and could cause tripping hazards; therefore, they should be removed to the receiving area and stacked with other pallets. (Pl. Exh. B, Under Seal). Here, despite Lowe's failure to aggregate and stack the pallets in the receiving area, store employees did collect them in a central area in such numbers that they presented an open and obvious condition to all present. Due to the open and obvious nature of the aggregated pallets, the likelihood that someone would fail to notice them or appreciate the hazard was small. Although the cost of preventing the harm was seemingly small, e.g., Lowe's employees could have carried the pallets to the receiving area, this likely would have interfered with the stocking activities of the workers, and required them to traverse potentially significant distances while lugging the pallets. Instead, the evidence suggests that workers collected the pallets in one area, before periodically moving them elsewhere throughout the day.

The court further observes that plaintiff's mishap with the pallets did not occur while he was performing his work duties. Rather, he attempted to traverse the pallets on his way out of the store at the end of the day. The blocked passage also did not represent Stocks' only means of egress. He either could have moved some pallets out of the way or walked around and down the adjacent aisle. Plaintiff contends that these were not viable alternatives because of the exigent circumstances created by the need to swiftly exit the store. This reasoning suggests that even if the barricade of pallets did not present an unreasonably dangerous condition by themselves, Lowe's enhanced the risk by compelling store workers to swiftly exit the building at closing time. While this argument enjoys some superficial appeal, it overlooks plaintiff's admission that

11

Lowe's generally afforded everyone five to fifteen minutes to exit the store, and that on the day in question, he continued to work at his station for several minutes before deciding to leave. Thus, Stocks himself was responsible for the exigent circumstances that created the perceived need to traverse the barricade of pallets. In short, there was no legitimate utility behind plaintiff's unsuccessful attempt to traverse the pallets.[10]

In the final analysis, it is manifest that Lowe's did not act unreasonably vis-a-vis Stocks. *See Murray, supra*. Stocks had been performing this same type of work for at least three years before his accident. (Stock Depo., pgs. 18-22). The potential hazard faced by anyone attempting to cross a pile of pallets was open and obvious to a worker like plaintiff who unloads product from pallets for a living. Given the instant circumstances, the collection of pallets did not present an unreasonable risk of harm, and thus Lowe's owed no duty to protect plaintiff from injuring himself thereon. *See, Allen v. The Kroger Co.*, 2005 WL 2180492 (W. D. La. Sept. 9, 2005) (stocking cart in the center of a grocery aisle presents no inherent hazard to the customer exercising reasonable care); *Thornton v. Board of Sup'rs of Louisiana State University*, 702 So.2d 72 (La. App. 2d Cir.1997) (summary judgment awarded for defendant where slip and fall plaintiff admitted that she chose to walk over leaves rather than using other available walkways not covered by leaves or vegetation); *Robertson v. State ex rel. Department of Planning and Control*, 747 So.2d 1276 (La. App. 2d Cir. 1999) (duty of school to provide safe campus did not extend to protect student from deliberately climbing on roof).

---

[10] Under plaintiff's reasoning, any object that blocked the aisle would have to be considered an unreasonable risk of harm. For example, if a Lowe's employee had parked a forklift or stacked boxes four feet high across the aisle, then Lowe's would be liable for anyone injured while trying to climb over them even though the items posed open and obvious obstacles.

12

Having resolved at least one inquiry in the duty/risk analysis against plaintiff, the undersigned is compelled to find that Lowe's is not liable for plaintiff's injuries. *Mathieu v. Imperial Toy Corp.*, 646 So.2d 318, 326 (La. 1994).

## II. Sharon Kay Stocks' Claim

Sharon Stocks' claim derives from her spouse's claim; thus, dismissal of the latter claim compels dismissal of the former. *See, Dumas v. Angus Chemical Co.*, 728 So. 2d 441, 452 (La. App. 2d Cir. 1999); *Benavides v. County of Wilson*, 955 F.2d 968, 975 (5th Cir. 1992).[11]

---

[11] Lowe's further contends that Ms. Stocks' claim is time-barred. Although consideration of this additional basis for dismissal is redundant at this point, the undersigned notes that defendant's motion fails to establish the untimeliness of Ms. Stocks' claim.
    In diversity cases, federal courts apply state laws on limitations and tolling. *Hensgens v. Deere & Co.*, 869 F.2d 879, 880 (5th Cir. 1989). In Louisiana, delictual actions are subject to a liberative prescriptive period of one year, running from the day injury or damage is sustained, i.e., from when the cause of action accrues. La. Civ. Code Art. 3492; *Succession of Dancie*, 191 La. 518, 186 So. 14 (La. 1939). The prescription statute is strictly construed against prescription and in favor of the obligation sought to be extinguished. *Wimberly v. Gatch*, 635 So. 2d 206, 211 (La. 1994). Ordinarily, the burden of proof is on the party pleading prescription. *Lima v. Schmidt*, 595 So. 2d 624, 628 (La. 1992). However, when it appears that the claims have prescribed on the face of the complaint, then the plaintiff has the burden of proof to establish facts which would have the effect of interrupting or avoiding prescription. *Martens v. North*, 1998 WL 378137 (E.D. La. 1998); *Wimberly, supra*.
    A cause of action for loss of consortium does not accrue until "a plaintiff suffers the actual loss of consortium, which has been held to occur at the time an injured party's condition deteriorates to such an extent that his family is actually deprived of his consortium, service or society." *Landry v. Avondale Industries, Inc.*, 864 So.2d 117 (La. 2003); *see also, Baldwin v. B.J. Hughes, Inc.*, 617 F. Supp. 30, 31 (Spouse's claims for mental suffering and loss of consortium do not arise until she actually suffers the loss which may be much later than when her spouse's cause of action accrued) (Veron, J.).
    Here, the complaint, as amended, does not reveal when Ms. Stocks sustained her loss. Moreover, defendant's motion neither alleges, nor establishes when the loss occurred. Accordingly, defendant has not proven that Ms. Stocks' claim are untimely as a matter of law, and summary judgment is not warranted on that basis. *See Baldwin, supra* ("Because there is absolutely no evidence before this Court as to when the plaintiff, Gloria J. Baldwin, first allegedly sustained damages, this Court is unable to hold as a matter of law that her claims are barred by the one year prescription set forth in Louisiana Civil Code Article 3492.") (addressing motion to dismiss under Rule 12(b)(6)).

**III. Employers Insurance Company of Wausau's Intervention**

Employers Insurance Company of Wausau, intervened herein to recover past and future compensation benefits and medical expenses that it paid to Stocks as a result of the accident. (Compl. in Intervention [doc. # 18]). A worker' compensation insurer's cause of action to recover compensation benefits paid on behalf an injured worker is limited to cases where a third party tortfeasor is legally liable for the injury. *Sandbom v. BASF Wyandotte, Corp.*, 674 So.2d 349, 362 (La. App. 1st Cir. 1996) (citing *inter alia*, La. R.S. 23:1101). When, as here, the court determines that the third party is not liable for the injured worker's damages, then the claim brought by the workers' compensation insurer is subject to dismissal for the same reasons. *Usry v. Louisiana Dept. of Highways*, 402 So.2d 240, 245 (La. App. 4th Cir. 1981).

## Conclusion

For the reasons set forth above, the undersigned finds that there is no genuine issue as to any material fact and that defendant, Lowe's Home Centers, Inc., is entitled to judgment as a matter of law, dismissing all claims asserted against it. Fed.R.Civ.P. 56. Accordingly,

**IT IS RECOMMENDED** that the motion for summary judgment [doc. # 31] filed by defendant, Lowe's Home Centers, Inc. be **GRANTED**, and that all claims brought by plaintiffs, Kenneth Stocks and Sharon Kay Stocks, and intervenor, Employers Insurance Company of Wausau against said defendant be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or

response or request for extension of time shall be furnished to the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 30th day of July, 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE